**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| **SHAREY THOMAS**, *et al.*, | § | Civil Action No.   3:21-cv-00498 |
| **Individually and on behalf** | § | |
| **of all others similarly situated** | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Plaintiffs*, | § | |
| | § | **COLLECTIVE ACTION** |
| v. | § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| | § | |
| **MAXIMUS, INC.** | § | |
| | § | **CLASS ACTION PURSUANT** |
| *Defendant.* | § | **TO FED. R. CIV. P. 23(b)(3)** |

---

### PLAINTIFFS' COLLECTIVE/CLASS ACTION COMPLAINT

---

Plaintiffs, Sharey Thomas, Jennifer Gilvin, Laura Vick, Shannon Garner, Nyeshia Young, and Olga Ramirez, bring this action individually and on behalf of all current and former hourly call-center employees (hereinafter "Plaintiffs and the Putative Class Members") who worked for MAXIMUS, Inc. (hereinafter "Defendant" or "MAXIMUS"), at any time during the relevant statutes of limitation through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b); the Kansas Wage Payment Act ("KWPA"), KAN. STAT. ANN. § 44-313, *et seq*.; the Kentucky Wage and Hour Act ("KWHA" or "Kentucky Act"), KY. REV. STAT. ANN. §§ 337.010, *et seq*.; the Louisiana Revised Statutes ("LWPA" or "Louisiana Wage Payment Act"), LA. REV. STAT. § 23:631, *et seq*., Louisiana Civil Code, LA. CIV. CODE ARTS. 2315, 2298 (collectively, "Louisiana Law"); Mississippi common law; Missouri common law, MO. REV. STAT. §§ 290.500, *et seq*.; and Texas common law.

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while the additional state law claims are asserted as class actions under Federal Rule

of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## I.
## OVERVIEW

1.     This is a collective action to recover overtime wages, liquidated damages, and other applicable penalties brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and class actions pursuant to the state laws of Kansas, Kentucky, Louisiana, Mississippi, Missouri, and Texas under FED. R. CIV. PROC. 23 to recover unpaid straight time, overtime wages, and other applicable penalties.

2.     Plaintiffs and the Putative Class Members are those similarly situated persons who have worked for MAXIMUS in call centers throughout the United States, at any time during the relevant time period(s) and have not been paid for all hours worked nor the correct amount of overtime in violation of state and federal law.

3.     Specifically, MAXIMUS has enforced a uniform company-wide policy wherein it improperly required its non-exempt hourly call-center employees—Plaintiffs and the Putative Class Members—to perform work off-the-clock and without pay in violation of state and federal law.

4.     MAXIMUS's illegal company-wide policy has caused Plaintiffs and the Putative Class Members to have hours worked that were not compensated and further created a miscalculation of their regular rate(s) of pay for purposes of calculating their overtime compensation each workweek.

5.     Although Plaintiffs and the Putative Class Members have routinely worked in excess of forty (40) hours per workweek, Plaintiffs and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6.     MAXIMUS knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

7.     Plaintiffs and the Putative Class Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA or applicable state laws.

8.     Plaintiffs and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time, overtime, liquidated damages, and other damages owed under the state laws of Kansas, Kentucky, Louisiana, Mississippi, Missouri and Texas as class actions pursuant to Federal Rule of Civil Procedure 23.

9.     Plaintiffs pray that all similarly situated workers be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10.     Plaintiffs also pray that the Rule 23 class is certified as defined herein, and the Plaintiffs designated herein be named as Class Representatives.

## II.
## THE PARTIES

11.     Plaintiff Sharey Thomas ("Thomas") was employed by MAXIMUS in Lawrence, Kansas during the relevant time periods. Plaintiff Thomas did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12.     Plaintiff Jennifer Gilvin ("Gilvin") was employed by MAXIMUS in Winchester, Kentucky during the relevant time periods. Plaintiff Gilvin did not receive compensation for all hours

---

[1] The written consent of Sharey Thomas is hereby attached as Exhibit "A."

worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

13.     Plaintiff Laura Vick ("Vick") was employed by MAXIMUS in Bogalusa, Louisiana during the relevant time periods. Plaintiff Vick did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

14.     Plaintiff Shannon Garner ("Garner") was employed by MAXIMUS in Hattiesburg, Mississippi during the relevant time periods. Plaintiff Garner did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[4]

15.     Plaintiff Nyeshia Young ("Young") was employed by MAXIMUS in Kansas City, Missouri during the relevant time periods. Plaintiff Young did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[5]

16.     Plaintiff Olga Ramirez ("Ramirez") was employed by MAXIMUS in El Paso, Texas during the relevant time periods. Plaintiff Ramirez did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[6]

---

[2] The written consent of Jennifer Gilvin is hereby attached as Exhibit "B."

[3] The written consent of Laura Vick is hereby attached as Exhibit "C."

[4] The written consent of Shannon Garner is hereby attached as Exhibit "D."

[5] The written consent of Nyeshia Young is hereby attached as Exhibit "E."

[6] The written consent of Olga Ramirez is hereby attached as Exhibit "F."

17.     The FLSA Collective Members are those current and former hourly call-center employees who were employed by MAXIMUS at any time from July 27, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

18.     The Kansas Class Members are those current and former hourly call-center employees who were employed by MAXIMUS in Kansas, at any time from July 27, 2018, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Thomas worked and was paid.

19.     The Kentucky Class Members are those current and former hourly call-center employees who were employed by MAXIMUS in Kentucky, at any time from July 27, 2016, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Gilvin worked and was paid.

20.     The Louisiana Class Members are those current and former hourly call-center employees who were employed by MAXIMUS in the State of Louisiana, at any time from July 27, 2018, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Vick worked and was paid.

21.     The Mississippi Class Members are those current and former hourly call-center employees who were employed by MAXIMUS in Mississippi, at any time from July 27, 2018, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Garner worked and was paid.

22.     The Missouri Class Members are those current and former hourly call-center employees who were employed by MAXIMUS in Missouri, at any time from July 27, 2017, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Young worked and was paid.

23.     The Texas Class Members are those current and former hourly call-center employees who were employed by MAXIMUS in Texas, at any time from July 27, 2017, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Ramirez worked and was paid.

24.     Defendant MAXIMUS, Inc. is a domestic for-profit corporation, organized under the laws of the State of Virginia, and may be served with process through its registered agent for service of process: **CORPORTION SERVICE COMPANY, 100 Shockoe Slip Fl 2, Richmond, Virginia 23219-4100.**

### III.
### JURISDICTION & VENUE

25.     This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

26.     This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367.

27.     This Court has personal jurisdiction over MAXIMUS because MAXIMUS's conduct within this District and Division.

28.     Venue is proper in the Eastern District of Virginia because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

29.     Specifically, MAXIMUS has maintained a working presence throughout the State of Virginia (and the United States), which is located within this District and Division.

30.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## ADDITIONAL FACTS

31.     MAXIMUS is a multinational services company with locations across the United States, Canada, Great Britain, Saudi Arabia, Italy, Singapore, South Korea, Sweden, and Australia.[7]

32.     MAXIMUS operates call centers throughout the United States and primarily serves federal, state, and local governments, holding itself out as "[t]he leading provider of Citizen Engagement Center solutions to government."[8]

33.     To provide its services, MAXIMUS employs numerous hourly call-center employees—Plaintiffs and the Putative Class Members—who assist MAXIMUS's clients' customers.

34.     Plaintiffs and the Putative Class Members' job duties generally consisted of answering phone calls made by MAXIMUS's clients' customers, answering customer inquiries, troubleshooting on behalf of customers, and generally assisting customers.

35.     Plaintiff Thomas was employed as a Customer Service Representative in Kansas from approximately April 2017 until May 2020.

36.     Plaintiff Gilvin has been employed as a Customer Service Representative in Kentucky since approximately August 2019.

37.     Plaintiff Vick has been employed by MAXIMUS as a Customer Service Representative in Louisiana since approximately February 2019.

38.     Plaintiff Garner was employed as a Customer Service Representative in Mississippi from approximately July 2019 until February 2020.

39.     Plaintiff Young was employed as a Customer Service Representative in Missouri from approximately June 2019 until October 2019.

---

[7] https://maximus.com/locations.

[8] https://maximus.com/our-company; https://maximus.com/contact-centers.

40.     Plaintiff Ramirez was employed as a Customer Service Representative in Texas from approximately July 2020 until August 2020.

41.     Plaintiffs and the Putative Class Members are non-exempt call-center employees that were (and continue to be) paid by the hour.

42.     Plaintiffs and the Putative Class Members typically worked (and continue to work) approximately forty (40) "on-the-clock" hours per week.

43.     In addition to their forty (40) "on-the-clock" hours, Plaintiffs and the Putative Class Members worked (and continue to work) up to four (4) hours "off-the-clock" per week for which they were not compensated.

44.     MAXIMUS employed (and continues to employ) other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiffs.

45.     Moreover, Plaintiffs and the Putative Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of MAXIMUS resulting in the complained of FLSA and state law violations alleged herein.

46.     MAXIMUS was (and continues to be) aware of its obligation to pay Plaintiffs and the Putative Class Members for all hours worked and pay the proper amount of overtime for all hours worked in excess of forty (40) each week but has failed to do so.

47.     Because MAXIMUS did not pay Plaintiffs and the Putative Class Members for all hours worked and time and a half for all hours worked in excess of forty (40) in a workweek, MAXIMUS's pay policies and practices violate the FLSA and the state laws alleged herein.

**Unpaid Start-Up Time**

48.     Plaintiffs and the Putative Class Members were not (and continue to not be) compensated for all the hours they worked for MAXIMUS as a result of MAXIMUS's corporate

policy and practice of requiring all call-center employees to be ready to take their first phone call the moment their official shift starts.

49.    Specifically, Plaintiffs and the Putative Class Members have been required to start and log into their computer, open multiple different MAXIMUS computer programs, log in to each MAXIMUS program, and ensure that each MAXIMUS program is running correctly in order to take their first phone call, which comes in as soon as their official shift starts.

50.    This process can take up to thirty (30) minutes or longer.

51.    If Plaintiffs and the Putative Class Members are not ready and on the phone at shift start, they can be (and often are) subject to discipline.

52.    If Plaintiffs and the Putative Class Members clock in prior to their shift start time, they are also subject to discipline.

53.    Therefore, the only way to be ready on time, and avoid discipline, is to prepare the computer "off-the-clock" and without pay.

54.    Although this start-up time is necessary and integral to their job duties, Plaintiffs and the Putative Class Members have not been compensated for this time.

55.    MAXIMUS has required Plaintiffs and the Putative Class Members to be ready to accept their first customer call the moment the employee's official shift starts.

56.    MAXIMUS also required that Plaintiffs and the Putative Class Members must log on and have all the requisite computer programs running before their first phone call at the start of their official shift.

57.    As such, MAXIMUS required (and continues to require) that Plaintiffs and the Putative Class Members perform these start-up tasks "off-the-clock" before their official shift begins.

**Unpaid Work During Meal Period Breaks**

58.     MAXIMUS provides Plaintiffs and the Putative Class Members with one unpaid 30-minute meal break each day.

59.     However, MAXIMUS requires Plaintiffs and the Putative Class Members to perform "off-the-clock" work during their unpaid meal break.

60.     Plaintiffs and the Putative Class are required to stay on the clock and on call until the minute their meal break begins, clock out, then log out of the phone system or otherwise go into an aux mode, and then log off their computer prior to leaving their desk for their meal break.

61.     Plaintiffs and the Putative Class Members are required to log back into their computer, perform a restart process, log back into the phone system, then clock in, and be back on the phone right at the moment their meal break ends.

62.     The log off process used prior to taking a meal break can take one (1) to three (3) minutes.

63.     The log in process used after returning from a meal break can take one (1) to three (3) minutes.

64.     This lengthy log off and log in procedure had to be performed during Plaintiffs and the Putative Class Members' meal break per MAXIMUS's policy.

65.     Because of this lengthy log off and log in procedure, Plaintiffs and the Putative Class Members were (and are) required to work during their 30-minute meal break period, and were not completely relieved of their duties for the thirty (30) minute break.

66.     Regardless of whether Plaintiffs and the Putative Class Members worked during their 30-minute meal break period, MAXIMUS's policy is to automatically deduct thirty (30) minutes from Plaintiffs' and the Putative Class Members' paycheck for each day worked.

67.     Thus, Plaintiffs and the Putative Class Members were not paid for all breaks lasting less than thirty (30) minutes.

### Unpaid Post-Shift Calls

68.     Plaintiffs and the Putative Class Members were not (and still are not) permitted to hang up on customers and must finish every call regardless of how long it takes.

69.     Plaintiffs and the Putative Class Members frequently found (and continue to find) themselves handling calls past the end of their shift end time or into their scheduled meal break.

70.     Plaintiffs and the Putative Class Members were not compensated for the time they worked for MAXIMUS after their shifts ended or into their meal break although they were required to continue assisting customers.

71.     Additionally, Plaintiffs and the Putative Class Members were directed to clock out at the end of their shift before finishing any after call notes that needed to be entered, and then performing a lengthy shut down process.

72.     Because MAXIMUS requires Plaintiffs and the Putative Class Members to perform these processes only after they have clocked out, MAXIMUS requires Plaintiffs and the Putative Class Members to perform this work "off-the-clock."

### Unpaid Shut Down Time

73.     Plaintiffs and the Putative Class Members were (and still are) required to carefully log out of each of MAXIMUS's programs, and fully shut down their computer after their shift end time.

74.     MAXIMUS trained Plaintiffs and the Putative Class Members to clock out after their last call, and then perform a specific computer shut down process, which could take anywhere from three (3) to five (5) minutes or more each day.

75.     If Plaintiffs and the Putative Class Members recorded the time they spent on the post-shift shut down process, they would accrue unauthorized overtime and be subject to discipline.

76.     Therefore, MAXIMUS did not pay Plaintiffs and the Putative Class Members for their post-shift shut down.

77.     As a result of MAXIMUS's corporate policy and practice of requiring Plaintiffs and the Putative Class Members to perform their computer start up tasks off-the-clock before the beginning of their shifts, to perform their computer shut down tasks after the end of their shift, and to perform log-in and log-out processes during their unpaid meal period breaks Plaintiffs and the Putative Class Members were not compensated for all hours worked, including all worked in excess of forty (40) in a workweek at the rates required by the FLSA.

78.     Because MAXIMUS did not pay Plaintiffs and the Putative Class Members time and a half for all hours worked in excess of forty (40) in a workweek, MAXIMUS's pay policies and practices willfully violate the FLSA.

79.     Because MAXIMUS did not pay Plaintiffs and the Putative Class Members for all straight-time hours worked, MAXIMUS's pay policies and practices also violate the state laws of Kansas, Kentucky, Louisiana, Missouri, Mississippi, and Texas.

## V.
## CAUSES OF ACTION

### COUNT ONE
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

80.     All previous paragraphs are incorporated as though fully set forth herein.

81.     The FLSA Collective is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY MAXIMUS, INC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM JULY 27, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or "FLSA Collective Members")**

82.     At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

83.     At all times hereinafter mentioned, MAXIMUS has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

84.     At all times hereinafter mentioned, MAXIMUS has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

85.     During the respective periods of Plaintiffs and the FLSA Collective Members' employment by MAXIMUS, these individuals have provided services for MAXIMUS that involved interstate commerce for purposes of the FLSA.

86.     In performing the operations hereinabove described, Plaintiffs and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

87.     Specifically, Plaintiffs and the FLSA Collective Members are non-exempt hourly call-center employees of MAXIMUS who assisted MAXIMUS's customers throughout the United States. 29 U.S.C. § 203(j).

88.     At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

89.     The proposed class of similarly situated employees, i.e., putative class members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 81.

90.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of MAXIMUS.

**B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT**

91.     MAXIMUS has violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206–7, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

92.     Plaintiffs and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of MAXIMUS's acts or omissions as described herein; though MAXIMUS is in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

93.     Moreover, MAXIMUS knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees for all hours worked and the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

94.     MAXIMUS knew or should have known its pay practices were in violation of the FLSA.

95.     MAXIMUS is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

96.     Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted MAXIMUS to pay them according to the law.

97.     The decision and practice by MAXIMUS to not pay for all hours worked and the proper amount of overtime for all hours worked over forty (40) each week was neither reasonable nor in good faith.

98.     Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid for all hours worked and overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.     COLLECTIVE ACTION ALLEGATIONS

99.     All previous paragraphs are incorporated as though fully set forth herein.

100.    Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all of MAXIMUS's employees who have been similarly situated to Plaintiffs with regard to the work they performed and the manner in which they were paid.

101.    Other similarly situated employees of MAXIMUS have been victimized by MAXIMUS's patterns, practices, and policies, which are in willful violation of the FLSA.

102.    The FLSA Collective Members are defined in Paragraph 81.

103.    MAXIMUS's failure to pay Plaintiffs and the FLSA Collective Members for all hours worked and overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of MAXIMUS, and does not depend on the personal circumstances of Plaintiffs or the FLSA Collective Members.

104.    Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

105.    The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

106.    All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be paid for all hours worked and at the proper overtime rate for all hours worked in excess of forty (40) hours per workweek.

107.    Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

108.    Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and MAXIMUS will retain the proceeds of its violations.

109.    Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

110.    Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 81 and notice should be promptly sent.

## COUNT TWO
### (Class Action Alleging Violations of the Kansas Wage Payment Act)

A.    **KWPA COVERAGE**

111.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

112.    The Kansas Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO HAVE BEEN EMPLOYED BY MAXIMUS, INC. IN KANSAS, AT ANY TIME FROM JULY 27, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Kansas Class" or "Kansas Class Members")**

113.    At all times hereinafter mentioned, MAXIMUS was and has been an "employer" within the meaning of the KWPA. KAN. STAT. ANN. § 44-313(a).

114.     At all times hereinafter mentioned, Plaintiff Thomas and the Kansas Class Members have been "employees" within the meaning of the KWPA. KAN. STAT. ANN. § 44-313(b)

115.     The employer, MAXIMUS, is not exempt from the requirements under KWPA.

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE KWPA**

116.     All previous paragraphs are incorporated as though fully set forth herein.

117.     The KWPA requires employers, like MAXIMUS, to pay all wages due for all hours worked at least once during each calendar month, on regular paydays. *See* KAN. STAT. ANN. § 44-314(a).

118.     Plaintiff Thomas and the Kansas Class Members are non-exempt employees who are entitled to be paid for all hours worked. *See Id.*

119.     MAXIMUS has a company-wide policy and practice of failing to pay Plaintiff Thomas and Kansas Class Members for all hours worked within the time period defined by the KWPA. *See* KAN. STAT. ANN. § 44-313(a); *see also Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167 (D. Kan. 2011).

120.     Plaintiff Thomas and the Kansas Class Members worked for MAXIMUS and were (and continue to be) entitled to their earned wages for all hours worked.

121.     MAXIMUS is liable to Plaintiff Thomas and the Kansas Class Members for the wages they earned.

122.     MAXIMUS willfully failed (and continues to fail) to pay Plaintiff Thomas and the Kansas Class Members for all hours worked.

123.     MAXIMUS has a continuing policy and practice of failing to pay all wages earned by Plaintiff Thomas and the Kansas Class Members. *See* KAN. STAT. ANN. § 44-313(a).

124.     As a result of MAXIMUS's illegal and company-wide policies applicable to Plaintiff Thomas and the Kansas Class Members' wages, MAXIMUS violated the KWPA.

125.    MAXIMUS's failure to pay for all hours worked to the Kansas Class Members who performed work on behalf of MAXIMUS in Kansas is part of a continuing course of conduct.

126.    Plaintiff Thomas and the Kansas Class Members who performed work on behalf of MAXIMUS in Kansas are entitled to invoke the benefits of the KWPA, including but not limited to KAN. STAT. ANN. § 44-315(b).

127.    As a result, this action may encompass all violations that occurred as part of MAXIMUS's continuing course of conduct regardless of the date on which they occurred.

128.    Plaintiff Thomas and the Kansas Class Members have suffered damages and continue to suffer damages as a result of MAXIMUS's acts or omissions described herein, and MAXIMUS is in possession and control of necessary documents and information from which the Kansas Class Members would be able to precisely calculated damages.

129.    Plaintiff Thomas and the Kansas Class Members seek the amount of their underpayments based on MAXIMUS's failure to pay wages for all hours worked, an equal amount as liquidated damages, and such other legal and equitable relief from MAXIMUS's willful conduct as the Court deems just and proper.

130.    Accordingly, the Kansas Class should be certified as defined in Paragraph 112.

C.    **KANSAS CLASS ACTION ALLEGATIONS**

131.    Plaintiff Thomas brings her KWPA claims pursuant to Kansas law as a class action pursuant to Rule 23 on behalf of all similarly situated individuals who worked for MAXIMUS in Kansas at any time between July 27, 2018, and the present.

132.    Class action treatment of Plaintiff Thomas and the Kansas Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

133.    The number of Kansas Class Members is so numerous that joinder of all class members is impracticable.

134.    The claims alleged by Plaintiff Thomas share common issues of law and fact with the claims of the Kansas Class Members.

135.    Plaintiff Thomas is a member of the Kansas Class, her claims are typical of the claims of other Kansas Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other class members.

136.    Plaintiff Thomas and her counsel will fairly and adequately represent the Kansas Class Members and their interests.

137.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

138.    Accordingly, the Kansas Class should be certified as defined in Paragraph 112.

## COUNT THREE
**(Class Action Alleging Violations of the Kentucky Wage and Hour Act)**

**A.    KWHA COVERAGE**

139.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

140.    The Kentucky Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO HAVE BEEN EMPLOYED BY MAXIMUS, INC. IN KENTUCKY, AT ANY TIME FROM JULY 27, 2016, THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Kentucky Class" or "Kentucky Class Members").**

141.    At all times hereinafter mentioned, MAXIMUS has been an "employer" within the meaning of the KWHA. KY. REV. STAT. ANN. §§ 337.010, *et seq*.; 803 KY. ADMIN. REGS. 1:005.

142.    At all times hereinafter mentioned, Plaintiff Gilvin and the Kentucky Class Members have been "employees" within the meaning of the KWHA. KY. REV. STAT. ANN. §§ 337.010, *et seq.*; 803 KY. ADMIN. REGS. 1:005.

## B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE KWHA

143.    All previous paragraphs are incorporated as though fully set forth herein.

144.    The KWHA provides that no employer "shall require any employee to work without a rest period of at least (10) minutes for each four (4) hours worked . . . **No reduction in compensation shall be made for hourly or salaried workers**." KY. REV. STAT. ANN. § 337.365 (emphasis added).

145.    The KWHA further requires that "[e]very employer doing business in [Kentucky] shall . . . pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment." KY. REV. STAT. ANN. § 337.020.

146.    MAXIMUS has willfully failed to pay Plaintiff Gilvin and the Kentucky Class Members for all hours they worked. When this "off-the-clock" time is included as time worked, MAXIMUS has failed to pay Plaintiff Gilvin and the Kentucky Class Members correct wages, and overtime wages, as required by the KWHA.

147.    Plaintiff Gilvin and the Kentucky Class Members have suffered damages and continue to suffer damages as a result of MAXIMUS's acts or omissions as described herein, and MAXIMUS is in possession and control of necessary documents and information from which Plaintiff Gilvin would be able to precisely calculate damages.

148.    Plaintiff Gilvin, on behalf of herself and the Kentucky Class Members, seeks recovery of their unpaid wages and an additional equal amount as liquidated damages, attorneys' fees, costs, and reasonable expenses of this action to be paid by MAXIMUS. *See* KY. REV. STAT. ANN. §337.385.

149.    The proposed class of employees sought to be certified pursuant to the Kentucky Wage and Hour Act, is defined in Paragraph 140.

150.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of MAXIMUS.

C.      **KENTUCKY CLASS ALLEGATIONS**

151.    Plaintiff Gilvin brings her Kentucky claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by MAXIMUS to work in Kentucky at any time between July 27, 2016, and the present. *See* KY. REV. STAT. ANN. § 413.120(2).

152.    Class action treatment of Plaintiff Gilvin's claims are appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

153.    The number of Kentucky Class Members is so numerous that joinder of all class members is impracticable.

154.    The claims alleged by Plaintiff Gilvin share common issues of law and fact with the claims of the Kentucky Class Members.

155.    Plaintiff Gilvin is a member of the Kentucky Class, her claims are typical of the claims of other class members, and she has no interests that are antagonistic to or in conflict with the interests of other class members.

156.    Plaintiff Gilvin and her counsel will fairly and adequately represent the class members and their interests.

157.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

158.    Accordingly, the Kentucky Class should be certified as in Paragraph 140.

## COUNT FOUR
### (Class Action Alleging Violations of Louisiana Law)

A.      **VIOLATIONS OF LOUISIANA LAW**

159.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

160.    Plaintiff Vick further brings this action pursuant to the applicable Louisiana Law. LA. REV. STAT. § 23:635; LA. CIV. CODE ARTS. 2315, 2298.

161.    The Louisiana Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY MAXIMUS, INC., IN LOUISIANA, AT ANY TIME FROM JULY 27, 2018, THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Louisiana Class" or "Louisiana Class Members").**

B.      **FAILURE TO PAY WAGES IN ACCORDANCE WITH LOUISIANA LAW**

162.    All previous paragraphs are incorporated as though fully set forth herein.

163.    The proposed class of employees sought to be certified pursuant to Louisiana Law is defined in Paragraph 161.

### VIOLATIONS OF LA. CIV. CODE ART. 2315

164.    All previous paragraphs are incorporated as though fully set forth herein.

165.    The Louisiana Civil Code creates liability for "every act whatever of man that causes damages to another." LA. CIV CODE ART. 2315.

166.    Conversion is the "commission of a wrongful act of dominion [and control] over the property of another in denial of or inconsistent with the owner's rights." *Bernofsky v. Tulane Univ. Med. School*, 962 F.Supp. 895 (E.D. La. 1997) (citing *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1 (5th Cir. 1992)).

167.     Conversion liability is established when the injured person owned or had a right to possess the property, the actor's use of the property was inconsistent with the owner's rights, and the use constitutes a wrongful taking. *See id.*

168.     MAXIMUS intentionally interfered with and exercised dominion and control over Plaintiff Vick and the Louisiana Class Members' wages and compensation that Plaintiff Vick and the Louisiana Class Members had the legal right to possess as alleged herein.

169.     Plaintiff Vick and the Louisiana Class Members have the legal right to possess the unpaid wages and compensation that MAXIMUS has unlawfully withheld.

170.     As a result of MAXIMUS's violations of LA. CIV. CODE ART. 2315, Plaintiff Vick and the Louisiana Class Members are entitled to recover the wages unlawfully withheld by MAXIMUS, to the extent same does not overlap with or duplicate the FLSA damages alleged herein, costs of the action, and pre- and post-judgment interest pursuant to LA. CIV CODE ART. 2315.

### VIOLATIONS OF LA. REV. STAT. § 23:635

171.     All previous paragraphs are incorporated as though fully set forth herein.

172.     LA REV. STAT. § 23:635 prohibits employers from deducting any sum from their employees' wages, unless permitted by law.

173.     MAXIMUS unlawfully made (and continues to make) deductions from Plaintiff Vick and the Louisiana Class Members' wages.

174.     MAXIMUS's knowing and intentional retention of these deducted wages were (and are) willful violations of LA REV. STAT. § 23:635.

175.     As a result of MAXIMUS's unlawful deductions from their wages, Plaintiff Vick and the Louisiana Class Members have suffered damages and continue to suffer damages, and MAXIMUS is in possession and control of necessary documents and information from which Plaintiff Vick would be able to precisely calculate damages.

176.     Plaintiff Vick, on behalf of herself and the Louisiana Class Members, are entitled to recover their unpaid wages, penalty wages, reasonable attorneys' fees, and pre- and post-judgment interests, to be paid by MAXIMUS. *See* LA. REV. STAT. § 23:635.

177.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of MAXIMUS.

### VIOLATIONS OF LA. CIV. CODE ART. 2298

178.     All previous paragraphs are incorporated as though fully set forth herein.

179.     Additionally, and in the alternative, Plaintiff Vick and the Louisiana Class Members allege unjust enrichment.

180.     The Louisiana Civil Code provides a "person who has been enriched without cause at the expense of another person is bound to compensate that person." LA. CIV. CODE ART. 2298.

181.     MAXIMUS has enriched (and continues to enrich) itself without cause by failing and/or refusing to compensate Plaintiff Vick and the Louisiana Class Members all wages to which they are entitled.

182.     MAXIMUS's enrichment was (and is) at Plaintiff Vick and the Louisiana Class Members' expense because, but for MAXIMUS's intentional and willful violations, Plaintiff Vick and the Louisiana Class Members would have received compensation for all hours they worked.

183.     Plaintiff Vick and the Louisiana Class Members are entitled to recover their unpaid wages and pre- and post-judgment interests pursuant to LA. CIV. CODE ART. 2298.

### C.     LOUISIANA CLASS ALLEGATIONS

184.     Plaintiff Vick brings her Louisiana Claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by MAXIMUS to work in Louisiana since July 27, 2018.

185.     Class action treatment of the Louisiana Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

186.     The number of Louisiana Class Members is so numerous that joinder of all class members is impracticable.

187.     The claims alleged by Plaintiff Vick share common issues of law and fact with the claims of the Louisiana Class Members.

188.     Plaintiff Vick is a member of the Louisiana Class, her claims are typical of the claims of the other Louisiana Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the other Louisiana Class Members.

189.     Plaintiff Vick and her counsel will fairly and adequately represent the Louisiana Class Members and their interests.

190.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

191.     Accordingly, the Louisiana Class should be certified as defined in Paragraph 161.

**COUNT FIVE**
**(Class Action Alleging Violations of Mississippi Common Law)**

**A.     VIOLATIONS OF MISSISSIPPI COMMON LAW**

192.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

193.     Plaintiff Garner further brings this action pursuant to the equitable theory of *quantum meruit. See Newsom v. Carolina Logistics Servs., Inc.*, No. 2:11CV172-DCB-JMV, 2012 WL 3886127, at *2 (N.D. Miss. Sept. 6, 2012) (citing *Fritts v. GAB Robins North America, Inc.*, No. 2:06CV35KS-MTP, 2007 WL 735675, at *3 (S.D. Miss March 8, 2007)).

194.    The Mississippi Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO HAVE BEEN EMPLOYED BY MAXIMUS, INC. IN MISSISSIPPI, AT ANY TIME FROM JULY 27, 2018, THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Mississippi Class" or "Mississippi Class Members").**

195.    The Mississippi Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of MAXIMUS.

196.    These claims are independent of Plaintiff Garner's claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Newsom,* 2012 WL 3886127, at *3 ("Plaintiffs' claims for the reasonable value of services rendered which are not addressed by the FLSA, i.e., gap time work … are not preempted"); *Washington v. Fred's Stores of Tennessee, Inc.,* 427 F.Supp.2d 725, 729 (S.D. Miss. 2006) (citing *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1151 (9th Cir.2000)).

197.    Plaintiff Garner and the Mississippi Class Members provided valuable services for MAXIMUS, at MAXIMUS's direction and with MAXIMUS's acquiescence.

198.    Plaintiff Garner and the Mississippi Class Members conferred a valuable benefit on MAXIMUS because they provided services to MAXIMUS while not on the clock—during their respective computer start-up times, compensable breaks, and after their shifts ended—without compensation

199.    MAXIMUS accepted Plaintiff Garner and the Mississippi Class Members' services and benefited from their timely dedication to MAXIMUS's policies and adherence to MAXIMUS's schedule.

200.    MAXIMUS was aware that Plaintiff Garner and the Mississippi Class Members expected to be compensated for the services they provided MAXIMUS.

201.    MAXIMUS has therefore benefited from services rendered by Plaintiff Garner and the Mississippi Class Members, and it is inequitable for MAXIMUS to retain the benefit of Plaintiff Garner and the Mississippi Class Members' services without paying fair value for them.

202.    Plaintiff Garner and the Mississippi Class Members are entitled to recover pursuant to the equitable theory of quantum meruit.

**B.    MISSISSIPPI CLASS ALLEGATIONS**

203.    Plaintiff Garner brings her Mississippi claim as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by MAXIMUS to work in Mississippi since July 27, 2018. *See* MISS. CODE § 15-1-49.

204.    Class action treatment of the Mississippi Class Members is appropriate because, as alleged below, all of the Federal Rule of Civil Procedure 23's class action requisites are satisfied.

205.    The number of Mississippi Class Members is so numerous that joinder of all class members is impracticable.

206.    The claims alleged by Plaintiff Garner share common issues of law and fact with the claims of the Mississippi Class Members.

207.    Plaintiff Garner is a member of the Mississippi Class, her claims are typical of the claims of the other Mississippi Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the other Mississippi Class Members.

208.    Plaintiff Garner and her counsel will fairly and adequately represent the Mississippi Class Members and their interests.

209.    Class certification is appropriate under the Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

210.    Accordingly, the Mississippi Class should be certified as defined in Paragraph 194.

## COUNT SIX
### (Class Action Alleging Violations of Missouri Common Law)

**A.    VIOLATIONS OF MISSOURI COMMON LAW**

211.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

212.    Plaintiff Young further brings this action pursuant to the equitable theory of unjust enrichment to recover unpaid straight time, which is not covered by the FLSA. *See Cent. Parking Sys. of Missouri, LLC v. Tucker Parking Holdings, LLC*, 519 S.W.3d 485, 498 (Mo. Ct. App. 2017).

213.    The Missouri Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO HAVE BEEN EMPLOYED BY MAXIMUS, INC. IN MISSOURI, AT ANY TIME FROM JULY 27, 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Missouri Class" or "Missouri Class Members").**

214.    The Missouri Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of MAXIMUS.

215.    These claims are independent of Plaintiff Young's claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Cope v. Let's Eat Out, Inc.,* No. 6:16-CV-03050-SRB, 2016 WL 3466140, at *3 (W.D. Mo. June 21, 2016) (ruling unjust enrichment is not preempted by the FLSA or Missouri Minimum Wage Law).

216.    MAXIMUS was enriched by receiving the benefit of unpaid labor provided by Plaintiff Young and the Missouri Class.

217.    The unpaid labor was provided at the expense of Plaintiff Young and the Missouri Class.

218.    MAXIMUS accepted Plaintiff Young and the Missouri Class Members' valuable services and benefited from their timely dedication to MAXIMUS's policies and adherence to MAXIMUS's schedule.

219.    MAXIMUS failed to pay the reasonable value of the service provided by Plaintiff Young and the Missouri Class Members.

220.    Further it would be unjust to allow MAXIMUS to retain the benefit conferred by Plaintiff Young and the Missouri Class Members under these circumstances.

221.    MAXIMUS has therefore benefited from services rendered by Plaintiff Young and the Missouri Class Members, and it is inequitable for MAXIMUS to retain the benefit of Plaintiff Young and the Missouri Class Members' services without paying fair value for them.

## B.    MISSOURI CLASS ALLEGATIONS

222.    Plaintiff Young brings her Missouri claim as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by MAXIMUS to work in Missouri since July 27, 2016. *See* MO. ANN. STAT. § 516.120

223.    Class action treatment of the Missouri Class Members is appropriate because, as alleged below, all of the Federal Rule of Civil Procedure 23's class action requisites are satisfied.

224.    The number of Missouri Class Members are so numerous that joinder of all class members is impracticable.

225.    The claims alleged by Plaintiff Young share common issues of law and fact with the claims of the Missouri Class Members.

226.    Plaintiff Young is a member of the Missouri Class, her claims are typical of the claims of the other Missouri Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the other Missouri Class Members.

227.    Plaintiff Young and her counsel will fairly and adequately represent the Missouri Class Members and their interests.

228.    Class certification is appropriate under the Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

229.    Accordingly, the Missouri Class should be certified as defined in Paragraph 213.

<u>COUNT SEVEN</u>
**(Class Action Alleging Violations of Texas Common Law)**

A.    **VIOLATIONS OF TEXAS COMMON LAW**

230.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

231.    Plaintiff Ramirez further brings this action pursuant to the equitable theory of *quantum meruit. See Artemis Seafood, Inc. v. Butcher's Choice, Inc.*, No. CIV. A. 3:98-0282, 1999 WL 608853, at *3 (N.D. Tex. Aug. 11, 1999) (citing *Schuchart & Assocs. v. Solo Serve Corp.*, 1983 WL 1147, at *23 (W.D. Tex. June 29, 1983)).

232.    The Texas Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO HAVE BEEN EMPLOYED BY MAXIMUS, INC. IN TEXAS, AT ANY TIME FROM JULY 27, 2017, THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Texas Class" or "Texas Class Members").**

233.    Plaintiff Ramirez and the Texas Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of MAXIMUS.

234.    These claims are independent of Plaintiff Ramirez's claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 867 (S.D. Tex. 2014).

235.    Plaintiff Ramirez and the Texas Class Members provided valuable services for MAXIMUS, at MAXIMUS's direction and with MAXIMUS's acquiescence.

236.    Plaintiff Ramirez and the Texas Class Members conferred a valuable benefit on MAXIMUS because they provided services to MAXIMUS while not on the clock—during their respective computer start-up times, compensable breaks, and after their shifts ended—without compensation.

237.    MAXIMUS accepted Plaintiff Ramirez and the Texas Class Members' services and benefited from their timely dedication to MAXIMUS's policies and adherence to MAXIMUS's schedule.

238.    MAXIMUS was aware that Plaintiff Ramirez and the Texas Class Members expected to be compensated for the services they provided MAXIMUS.

239.    MAXIMUS has therefore benefited from services rendered by Plaintiff Ramirez and the Texas Class Members and it is inequitable for MAXIMUS to retain the benefit of Plaintiff Ramirez and the Texas Class Members' services without paying fair value for them.

240.    Plaintiff Ramirez and the Texas Class Members are thus entitled to recover pursuant to the equitable theory of quantum meruit.

**B.    TEXAS CLASS ALLEGATIONS**

241.    Plaintiff Ramirez brings her Texas claim as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by MAXIMUS to work in Texas since July 27, 2017. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004.

242.    Class action treatment of the Texas Class Members is appropriate because, as alleged below, all of the Federal Rule of Civil Procedure 23's class action requisites are satisfied.

243.    The number of Texas Class Members is so numerous that joinder of all class members is impracticable.

244.     The claims alleged by Plaintiff Ramirez share common issues of law and fact with the claims of the Texas Class Members.

245.     Plaintiff Ramirez is a member of the Texas Class, her claims are typical of the claims of the other Texas Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the other Texas Class Members.

246.     Plaintiff Ramirez and her counsel will fairly and adequately represent the Texas Class Members and their interests.

247.     Class certification is appropriate under the Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

248.     Accordingly, the Texas Class should be certified as defined in Paragraph 232.

## VI.
## RELIEF SOUGHT

249.     Plaintiffs respectfully pray for judgment against MAXIMUS as follows:

a.     For an Order certifying the FLSA Collective as defined in Paragraph 81 and requiring MAXIMUS to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

b.     For an Order certifying the Kansas Class as defined in Paragraph 112 and designating Plaintiff Thomas as the Class Representative of the Kansas Class;

c.     For an Order certifying the Kentucky Class as defined in Paragraph 140 and designating Plaintiff Gilvin as the Class Representative of the Kentucky Class;

d.     For an Order certifying the Louisiana Class as defined in Paragraph 161 and designating Plaintiff Vick as the Class Representative of the Louisiana Class;

e.      For an Order certifying the Mississippi Class as defined in Paragraph 194 and designating Plaintiff Garner as the Class Representative of the Mississippi Class;

f.      For an Order certifying the Missouri Class as defined in Paragraph 213 and designating Plaintiff Young as the Class Representative of the Missouri Class;

g.      For an Order certifying the Texas Class as defined in Paragraph 232 and designating Plaintiff Ramirez as the Class Representative of the Texas Class;

h.      For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

i.      For an Order pursuant to Section 16(b) of the FLSA finding MAXIMUS liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit);

j.      For an Order pursuant to Kansas state law awarding Plaintiff Thomas and the Kansas Class Members unpaid wages, liquidated damages, and other damages allowed by law;

k.      For an Order pursuant to Kentucky state law awarding Plaintiff Gilvin and the Kentucky Class Members unpaid wages, unpaid overtime, liquidated damages, and other damages allowed by law;

l.      For an Order pursuant to Louisiana state law awarding Plaintiff Vick and the Louisiana Class Members unpaid wages, penalty wages, and other damages allowed by law;

m.      For an Order pursuant to Mississippi common law awarding Plaintiff Garner and the Mississippi Class Members unpaid straight time wages and other damages allowed by law;

n.      For an Order pursuant to Missouri common law awarding Plaintiff Young and the Missouri Class Members unpaid straight time wages and other damages allowed by law;

o.      For an Order pursuant to Texas common law awarding Plaintiff Ramirez and the Texas Class Members unpaid straight time wages and other damages allowed by law;

p.      For an Order awarding costs and expenses of this action;

q.      For an Order awarding attorneys' fees;

r.      For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

s.      For an Order awarding Plaintiffs service awards as permitted by law;

t.      For an Order compelling the accounting of the books and records of MAXIMUS, at MAXIMUS's own expense; and

u.      For an Order granting such other and further relief as may be necessary and appropriate.

Date:   July 30, 2021                         Respectfully submitted,

By:     /s/ Zev Antell
                Harris D. Butler, III (VSB No. 26483)
                Craig J. Curwood (VSB No. 43975)
                Zev H. Antell (VSB No. 74634)
                **BUTLER CURWOOD, PLC**
                140 Virginia Street, Suite 302
                Richmond, Virginia 23219
                Telephone: (804) 648-4848
                Facsimile: (804) 237-0413
                Email: harris@butlercurwood.com
                        craig@butlercurwood.com
                        zev@butlercurwood.com


                **Clif Alexander** *(Pro Hac Vice Anticipated)*
                Texas Bar No. 24064805
                clif@a2xlaw.com
                **Austin W. Anderson** *(Pro Hac Vice Anticipated)*
                Texas Bar No. 24045189
                austin@a2xlaw.com
                **ANDERSON ALEXANDER, PLLC**
                819 N. Upper Broadway
                Corpus Christi, Texas 78401
                Telephone: (361) 452-1279
                Facsimile: (361) 452-1284


                ***Attorneys in Charge for Representative Plaintiffs***
                ***and Putative Collective/Class Members***