**DECLARATION OF MICHELLE TYREE**

I, Michelle Tyree, declare and state as follows:

1.       I am over the age of 18 and am otherwise competent to testify.  I have personal knowledge of the facts stated in this declaration.

2.       I am currently employed by Maximus, Inc. ("Maximus" or the "Company") at its facility located at 3833 Greenway Drive, Lawrence, Kansas.  I have been employed by the Company at this location since October 22, 2006.

3.       My current job title is "Customer Service Representative – Internal Support Group" in Written Correspondence.  I have worked in this position since around May 2020.  Prior to this, I was a "Customer Service Representative."

4.       My primary job duty as a "Customer Service Representative – Internal Support Group" is to answer telephone inquiries from other customer service representatives about letters that they received from beneficiaries or agents, scripts and procedural questions, and other general inquiries about their job duties.

5.       I normally work Monday through Friday, beginning at 7:00 a.m., working until 11:30 a.m., then take a half-hour lunch break, then work from 12:00 to 3:30 p.m.  I normally work approximately 40 hours per week at Maximus.

6.       I am familiar with the policies and procedures in place at the call center location where I work based on my work experience with the Company, including those regarding timekeeping, meal breaks, work hours, overtime.

7.       At my location, customer service representatives are expected to begin logging in to their computers, various programs, phone, and be on "call ready" status to take the first call at

Initials: _MT_

the start of their shifts. Employees have a three minute "grace period" between the start of their shift and the time they start taking calls.

8.    I typically arrive at the facility at 6:20 a.m. because I like to relax in my car before the start of my shift. I enter the facility around 6:45 a.m. and begin logging into my computer at 6:59 a.m. (I received approval from my supervisors to do so). My computer is already on upon my arrival. I open my email (this takes one second), my WFO (this takes two seconds), and my record entry tool (this takes one second). I then log into my phone by entering my code and entering "Aux-03" and then I log into NGD (this takes one to two minutes). Then I push the "Auto-In" button (this takes one second) and then I am ready to take calls. My first call usually comes in approximately 15 to 30 minutes after I indicate that I am ready to take calls.

9.    I am not expected to begin logging in to my computer, computer programs, or the phone system, prior to the start of my scheduled shift. In fact, there are actually policies prohibiting pre-shift work and I am reminded of those policies by supervisors and managers.

10.    I rarely experience technical issues with my computer or any of the programs I use. For example, in the last year, I recall technical issues occurring only twice, when I locked myself out of NGD. If I do experience any technical issue, I contact IT or a supervisor and the problem is usually resolved within two minutes. Even though I am not on the phone and actively handling calls during any down time due to a technical issue, I am still clocked in and I get paid for the time that I have to troubleshoot any computer issues.

11.    My lunch break typically is scheduled for 11:30 a.m., which is halfway through my shift. My lunch break is 30 minutes long. I know what time my scheduled lunch break is because I review my schedule each day when I come in to work. I remain available until 11:30 a.m. and then I put phone into "lunch" status and lock my computer, which takes two seconds, and leave

Initials: ___

my work station. Although I am permitted to eat at my work station, I go to my car and eat my lunch there while looking at my cell phone and listening to the radio.

12.    About once or twice per week, I perform work during part of my lunch break for a short duration (from ten to 15 minutes) because a call went a few minutes long. On those occasions, I then go to lunch and take my full 30-minute break. I am always paid for additional time I spent on the call.

13.    Five minutes before the end of my shift, if I am not on a call with a client, I toggle my phone to "not ready" or "Aux-03" status and log out of the computer programs. It takes me approximately two minutes to log out of all of my computer and phone programs. If I am on a call with a client, I complete the call and then proceed with logging out as described above. It takes approximately one second to restart my computer. Maximus requires that I restart my computer after my shift. I typically restart my computer after logging out. I stay at my work station while my computer is restarting, but the restarting process only takes about two minutes.

14.    I record the hours I work each day and each week in a program called "Deltek." For each day I work, I personally enter my time in Deltek at the end of m shift. When calculating hours worked, I base my start time on the time at which I begin logging in. I base my end time on the time at which I restart my computer. I have received training regarding these timekeeping practices during my time with the Company.

15.    To my knowledge, no one from Maximus has ever made downward adjustments to my time entries. In addition, no one from Maximus has ever asked or required me to perform work "off the clock" or during my lunch break. To my knowledge, there is no policy at Maximus requiring that customer service representatives arrive before their start of their shift in order to log into their computer, phone, and various computer programs before the shift start time. No

Initials: _____

employee of Maximus has ever instructed me to arrive at work early and begin logging into my computer, phone and computer programs before my shift begins

16.    Similarly, I am not aware of any Maximus policy requiring customer service representatives to remain at their work station while their computer is restarting, and no one from Maximus has ever instructed me to do so. I do this completely voluntarily to make sure that this task gets completed.

17.    Before being interviewed by the Company's attorney in connection with providing this statement, the attorney read me a printed statement informing me that, among other things:

a.    a lawsuit has been filed against the Company by several current and former customer service representatives who worked in Maximus call centers in various states alleging that the Company failed to properly pay them, and other call center employees, for work they performed before and/or after their shifts;

b.    I am within the group of individuals the plaintiffs seek to represent in that case;

c.    as a potential participant in that lawsuit, my interests may be adverse to Maximus' interests;

d.    the attorney I spoke with represents only Maximus, and does not represent me or other employees of the company;

e.    speaking with the attorney was entirely voluntary, and I had the right not to speak with the attorney, and to end the conversation at any time;

f.    it was entirely my choice as to whether to sign this declaration, and I understand that the Company would neither reward me, nor discriminate or retaliate against me, based on my decision;

Initials: MT

g.    I must review this declaration before signing it, notify the attorney of any errors, and sign it only if the declaration is entirely accurate; and

h.    the information I provide may be used to support the Company's defense in the lawsuit, which may be adverse to my interests.

18.    I have not been pressured or coerced in any way to provide this declaration, nor have I been offered any benefit or reward for doing so.  I attest to the facts in this declaration voluntarily and of my own free will.

I declare under penalty of perjury under the laws of the United States of America and the State of Kansas that the foregoing is true and correct.

Date: 11-19-2021

_Michelle R. Tyree_
Signature

_Michelle R. Tyree_
Printed Name

Initials: MRT