## DECLARATION OF PAULA WORKMAN

I, PAULA WORKMAN, declare and state as follows:

1.      I am over the age of 18 and am otherwise competent to testify.  I have personal knowledge of the facts stated in this declaration.

2.      I am currently employed by Maximus, Inc. ("Maximus" or the "Company") at its Lawrence, Kansas facility. I have been employed by the Company at this location for four years.

3.      My current job title is "Customer Service Representative, Tier 1 Pilot – Dual Train." I have worked in this position for approximately two and a half years.  Before my current role, my title was CSR Tier 1 Medicare.  That was the position I had when I first joined Maximus.

4.      My primary job duty as a customer service representative is to answer telephone inquiries from consumers and beneficiaries about a variety of Medicare-related questions. For example, I take questions about claims; account information; internet access to medicare.gov or healthcare.gov and how customers can set up their accounts and retrieve information on their own; and filling out applications. Sometimes the CSRs in the pilot group fill out surveys about call experience aimed at helping us better perform our job duties.  For example, if there's information on different screens that we think should be on one screen, we can provide that feedback.

5.      I work 7:00AM to 3:30PM Monday to Friday. My first break is at 8:30AM.  It is 15 minutes long. I have a 30 minute lunch break at 10:30AM.  My final 15-minute break is at 12:30 PM.  I have not worked overtime other than to finish a call that runs past my shift.  I normally work approximately 40 hours per week at Maximus.

6.      I am familiar with the policies and procedures in place at the call center location where I work based on my work experience with the Company.  I became familiar with them through training and emails. I received training when I was first was hired. Periodically, there are

Initials: _PW_

times we are asked to get off the phones to review a particular procedure. We are still on the clock when we do this. CCO Connections also has policies and procedures you can review online. Among the procedures are topics about timekeeping, meal breaks, work hours, and overtime. Such procedures also contain screenshots to show you how to properly perform these procedures. The procedures also contain aux codes to put into your phone when taking your breaks. The aux codes tells the call center what time you took your break and what time you come back from a break. Also included in the policies are bonus-related procedures. For instance, if you reported to your shifts on-time during a busy period like enrollment, you could be eligible for an incentive bonus. If you did not get one, and you think you should have, there are procedures to submit an appeal.

7.    I typically arrive at the facility at around 6:45 AM. I usually stop at the restroom. I then go to the breakroom to pick up ice or coffee if I need them. I proceed to my desk and am normally there by approximately 6:54 AM. I then log into my computer by pressing control + alt + delete (the computer is on from the night before in case there needs to be a system update overnight). I put in my username and password. I then log into my WFO to make sure there are no changes in my schedule. I then log into my email to see if there's anything I need to do before I get started. I then log into NGD. By the time I log into NGD, it is approximately 7:00 AM. I then look into scripting to see if there are any user alerts (e.g., a change in scripting) or blast information I need to do my job that day. When it reaches 7:00, I log into my phone, which is simply a matter of pressing "auto in" and takes a second. I'm ready to go by 7:03 AM. My schedule allows me to have between 7:00 AM and 7:03 AM to sign into my computer and be ready to take calls by 7:03 AM.

8.    I am not expected to begin logging in to my computer, computer programs, or the phone system, prior to the start of my scheduled shift.

Initials: _PLW_

9.  I do not frequently experience technical issues with my computer or any of the programs I use. For example, in the last several months, I've run into two technical issues. In both instances, I remained on-the-clock while troubleshooting the issue. One of these technical issues happened this past week. The system was slow in recognizing login information. I had to submit an exception form through email containing my name and employee ID number, the time the issue started, what time it ended, and a brief description of what happened. My supervisor reviews it and submits it to WFO. The time I spent dealing with the technical issue is not counted against my time.

10.  My lunch break typically is scheduled for 10:30 AM. My lunch break is 30 minutes long. I know what time my scheduled lunch break is because I review my schedule each day when I come in to work. To start my lunch break, I press aux 01 on my phone and lock my computer by pressing Window + L. This process takes a couple seconds. I then leave my desk. I eat lunch at my car and use my phone. I start heading back to the facility about five minutes before my lunch break ends. I might use the restroom before I return to my desk. I usually get back to my desk around 10:58 AM. I log back into my computer by pressing control + alt + delete and entering my password. If I have some time before 11:00, I might check my emails. My shift starts again when I press "auto in" on my phone. I always take 30 minutes for my break. I do not press "auto in" before 11:00.

11.  If I'm on a call that gets close to my scheduled lunch break, I press aux 01 so that my lunch time will not start until I finish the call. If the call runs seven minutes or more past 10:30 AM, I would submit an exception form to account for the time as an explanation for why I did not keep to my schedule that day. During my time here, I've had to submit several exception forms for this reason. No matter what, I get 30 minutes for my lunch. For example, if I started my lunch

Initials: _PLW_

at 10:50, I would return at 11:20. I am always paid for the time I spent on calls that went past my scheduled lunch break.

12.     As it nears the end of my shift, I enter aux 05 on my phone so I will not receive other calls and be ready to leave by 3:30 PM. To log out, I press "log out" on my phone. That stamps the time I actually stopped working. Then I fill out my time card on Deltek. Then I close all the programs I used and press restart on my computer. This process takes two to three minutes. By 3:30, I'm able to press restart on my computer. Once the computer shows that it is restarting, I leave. I usually leave promptly at 3:30.

13.     When I record my time on Deltek, I base my start time on the time at which I press "auto in" on my phone. I base my end time on the time at which I log out of my phone and computer, which is usually 3:30. If I had a call that ran past 3:30, I would account for that overtime. I have been paid for all overtime I spent on calls.

14.     To my knowledge, no one from Maximus has ever made downward adjustments to my time entries. In addition, no one from Maximus has ever asked or required me to perform work "off the clock" or during my lunch break.

15.     Similarly, I am not aware of any Maximus policy requiring customer service representatives to remain at their work station while their computer is restarting, and no one from Maximus has ever instructed me to do so. In addition, I have never seen or heard of any customer service representatives remaining at their work station to wait for their computer to restart at the end of their shift.

16.     Before being interviewed by the Company's attorney in connection with providing this statement, the attorney read me a printed statement informing me that, among other things:

Initials: _PLW_

Page 4 of 6

a. a lawsuit has been filed against the Company by several current and former customer service representatives who worked in Maximus call centers in various states alleging that the Company failed to properly pay them, and other call center employees, for work they performed before and/or after their shifts;

b. I am within the group of individuals the plaintiffs seek to represent in that case;

c. as a potential participant in that lawsuit, my interests may be adverse to Maximus' interests;

d. the attorney I spoke with represents only Maximus, and does not represent me or other employees of the company;

e. speaking with the attorney was entirely voluntary, and I had the right not to speak with the attorney, and to end the conversation at any time;

f. it was entirely my choice as to whether to sign this declaration, and I understand that the Company would neither reward me, nor discriminate or retaliate against me, based on my decision;

g. I must review this declaration before signing it, notify the attorney of any errors, and sign it only if the declaration is entirely accurate; and

h. the information I provide may be used to support the Company's defense in the lawsuit, which may be adverse to my interests.

17. I have not been pressured or coerced in any way to provide this declaration, nor have I been offered any benefit or reward for doing so. I attest to the facts in this declaration voluntarily and of my own free will.

Initials: _PLW_

I declare under penalty of perjury under the laws of the United States of America and the

State of Kansas that the foregoing is true and correct.

Date: 11/18/2021

_____
Signature

PAULA L. WORKMAN
_____
Printed Name

Initials: PLW