IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SHAREY THOMAS *et al.*,
individually and on behalf
of all others similarly situated,
    Plaintiffs,

v.                                                     Civil No. 3:21cv498 (DJN)

MAXIMUS, INC,
    Defendant.

**MEMORANDUM OPINION**
**(Granting in Part and Denying in Part Motion for**
**Conditional Certification and Notice and Ordering Further Briefing)**

Plaintiffs Sharey Thomas, Jennifer Gilvin, Laura Vick, Shannon Garner, Nyeshia Young and Olga Ramirez ("Plaintiffs") bring this action individually and on behalf of all other similarly situated individuals against Defendant Maximus, Inc. ("Defendant"), alleging violations of Sections 206, 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b) ("the FLSA"); the Kansas Wage Payment Act ("KWPA"), Kan. Stat. Ann. § 44-313, *et seq.*; the Kentucky Wage and Hour Act ("KWHA" or "Kentucky Act"), Ky. Rev. Stat. Ann. §§ 337.010, *et seq.*; the Louisiana Revised Statutes ("LWPA" or "Louisiana Wage Payment Act"), La. Rev. Stat. § 23:631, *et seq.*, Louisiana Civil Code, La. Civ. Code Arts. 2315, 2298 (collectively, "Louisiana Law"); Mississippi common law; Missouri common law, Mo. Rev. Stat. §§ 290.500, *et seq.*; Texas common law; and Virginia common law. Plaintiffs assert their FLSA claims as a collective action under § 16(b) of the FLSA, 29 U.S.C. § 216(b), and assert their state law claims as class actions under Federal Rule of Civil Procedure 23. This matter now comes before the Court on Plaintiffs' Opposed Motion for Conditional Certification and Notice

to Putative Class Members ("Mot." (ECF No. 28)). For the reasons set forth below, the Court hereby GRANTS IN PART AND DENIES IN PART the Motion.

## I. BACKGROUND

### A. Factual Background[1]

Defendant, a Virginia multinational corporation, operates call centers throughout the United States and primarily serves federal, state and local governments as a "Citizen Engagement Center." (1st Am. Collective/Class Action Compl. ¶¶ 35-36 ("Am. Compl.") (ECF No. 26).) Plaintiffs and the Putative Class Members[2] work as hourly call-center employees who assist the customers of Defendant's clients. (Am. Compl. ¶ 37.) Plaintiffs bring both this collective action to recover overtime wages, liquidated damages and other penalties pursuant to the FLSA and class actions pursuant to various state laws to recover unpaid straight time, overtime wages and other penalties. (Am. Compl. ¶ 1.)

Specifically, Plaintiffs assert that Defendant maintain and enforce a company-wide policy that requires all hourly call-center employees to get "call-ready"[3] before the start of their first shift, thereby requiring them to engage in unpaid, off-the-clock work every day. (Am. Compl.

---

[1] Unless otherwise noted, the Court bases the factual background on Plaintiffs' allegations in their Amended Complaint and their Declarations submitted in support of their Motion for Conditional Certification (ECF Nos. 26, 29). *See Santos v. E&R Servs., Inc.*, 2021 WL 6073039, at *1 n.1 (D. Md. Dec. 23, 2021) (basing factual background on complaint and Plaintiffs' declarations).

[2] The Court refers to the individuals who may be eligible to join this suit but have not yet done so as "putative class members" or "potential plaintiffs."

[3] "Call-ready" means that an employee has logged into their computer and ensured that the necessary computer programs are running correctly so that the employee can take calls, answer emails and handle support tickets. (Am. Compl. ¶ 55; Pls.' Mem. of Law in Supp. Of Pls.' Opposed Mot. for Conditional Certification and Notice to Putative Class Members ("Pls.' Mem.") at 4 n.8 (ECF No. 29).)

2

¶¶ 54-63.) This process can take thirty minutes or longer. (Am. Compl. ¶ 56.) Likewise, Plaintiffs assert that Defendant required them to log out of their computer programs and shut down their computer after the end of their shifts, a three- to five-minute process, when they had already clocked out. (Am. Compl. ¶¶ 83-84.)

Further, Plaintiffs allege that Defendant allows them one unpaid thirty-minute meal break per day. (Am. Compl. ¶ 64.) However, per Defendant's policy, they may not log out of their computer and phone system until their meal break begins, a process that can take one to three minutes. (Am. Compl. ¶¶ 66, 68.) Similarly, they must return to their computer before the end of their meal break to log back into their computer and phone, a process that also takes one to three minutes. (Am. Compl. ¶¶ 67, 69.) Defendant automatically deducts the thirty-minute meal break period from Plaintiffs' pay, meaning that they are never paid for this shut-down and restart time during their breaks. (Am. Compl. ¶¶ 72-73.) Finally, Plaintiffs claim that Defendant required them to finish every call that they take, including those calls that run past the end of the start of their meal break and the end of their shift. (Am. Compl. ¶ 78-79.) Defendant did not compensate them for these activities, either. (Am. Compl. ¶ 80.)

In total, Plaintiffs claim that they regularly complete one to two hours of unpaid, off-the-clock work beyond their normal forty-hour workweek. (Pls.' Mem. of Law in Supp. of Pls.' Opposed Mot. for Conditional Certification and Notice to Putative Class Members ("Pls.' Mem.") at 10 (ECF No. 29).) Employers subject to FLSA must compensate employees at rates at least one-and-one-half times their regular rates of compensation for all hours worked in excess of forty hours per week. 29 U.S.C. §§ 206-07, 215(a)(2).

### B. Procedural History

In July 2021, Plaintiffs filed their original Complaint. (ECF No. 1.) They filed their Amended Complaint on November 2, 2021. (ECF No. 26.) In Count One, Plaintiffs bring a collective action against Defendant under the FLSA. (Am. Compl. ¶¶ 90-120.) In Counts Two through Nine, Plaintiffs bring class actions under the laws of Florida, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Texas and Virginia. (Am. Compl. ¶¶ 121-295.) Based on these claims, Plaintiffs, on their own behalf and on behalf of the Putative Class Members, seek class certification under the FLSA and pursuant to the relevant state laws, unpaid wages, costs and expenses, attorneys' fees, pre- and post-judgment interest, a service award for Plaintiffs and accounting of Defendants' books and records. (Am. Compl. ¶ 296.)

On November 3, 2021, Plaintiffs moved for conditional certification and notice to putative class members pursuant to the FLSA, 29 U.S.C. § 216(b). (Mot. (ECF No. 28).) On November 24, 2021, Defendant filed its Memorandum in Opposition. (Mem. in Opp'n to Pls.' Mot. for Conditional Collective Certification ("Resp.") (ECF No. 38).) On December 3, 2021, Plaintiffs replied to Defendants' Response. (Reply (ECF No. 39).) On February 25, 2022, the Court conducted a conference call with the parties to discuss the instant Motion and next steps. (Tr. of Conference Call ("Tr.") (ECF No. 62).) The Motion for Conditional Certification is now ripe for review.

## II. ANALYSIS

### A. The FLSA Collective Action Certification Process

Under the FLSA, private plaintiffs may bring a collective action on their own behalf and on behalf of those "similarly situated" to them. 29 U.S.C. § 216(b). According to the statute,

4

> An action to recover the liability prescribed in [§ 216(b)] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.*

The Supreme Court has highlighted the importance of "employees receiving accurate and timely notice concerning the pendency of [a] collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The Court also emphasized that district courts have discretionary authority to facilitate notice to potential plaintiffs. *Id.* at 174. However, neither the Fourth Circuit nor the Supreme Court has prescribed a process for certification of FLSA collectives. *Ison v. MarkWest Energy Partners, LP*, 2021 WL 5989084, at *2 (S.D.W. Va. Dec. 17, 2021). Rather, like most federal courts across the country, district courts within the Fourth Circuit have "uniformly" followed the approach set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *Id.* at *3. Under *Lusardi*, district courts undertake a two-step process: (1) the notice stage, also called the conditional class certification stage, and (2) the class decertification stage. *Winks v. Va. Dep't. of Transp.*, 2021 WL 2482680, at *2 (E.D. Va. June 17, 2021) (citation omitted); *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (citations omitted).

At the notice step, courts evaluate whether the plaintiffs have met their burden of satisfying the "similarly situated" requirement under a somewhat lenient standard. *Winks*, 2021 WL 2482680, at *2 (citation omitted). The Fourth Circuit has yet to establish a definition for "similarly situated." *Yerby v. City of Richmond*, 2020 WL 602268, at *2 (E.D. Va. Feb. 7, 2020) (citation omitted). However, "[t]he primary focus . . . is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be

5

determined.'" *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) (citation omitted). Courts aim to determine whether, based on the pleadings and affidavits before them, "the presence of common issues allows the class-wide claims to be addressed without becoming bogged down by individual differences among class members." *Id.* at 832; *see also Amoko v. N&C Claims Serv., Inc.*, 2021 WL 6430992, at *1 (D.S.C. Dec. 29, 2021) (citation omitted) (describing courts' decision-making process at the notice stage). For that reason, the FLSA's certification requirements resemble, but are not identical to, the requirements for class certification under Federal Rule of Civil Procedure. *Houston*, 591 F. Supp. at 832 (citation omitted). Thus, courts consider whether plaintiffs have made "a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 564 (E.D. Va. 2006) (citations omitted). "Insubstantial differences in job duties, hours worked and wages due that do not materially affect whether a group of employees may be properly classified are not significant to the 'similarly situated' determination." *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 468 (E.D. Va. 2014) (citation omitted).

If the court determines that the plaintiffs meet the FLSA's "similarly situated" standard, the court will conditionally certify the collective and authorize notice to similarly situated plaintiffs so that they can opt into the collective action. *Amoko*, 2021 WL 6340992, at *1 (citation omitted). At that point, "the action proceeds as a representative action throughout discovery." *Id.* (citation omitted).

During the second stage of collective certification, the court applies "a more 'stringent' factual determination" to decide whether a putative collective fulfills the "similarly situated" standard. *LaFleur*, 30 F. Supp. 3d at 467 (citations omitted). "If, after discovery, it is apparent

6

that plaintiffs are not similarly situated, the court may decertify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice." *Id.* at 468 (citation omitted).

As an initial matter, Defendant argues that the Court should not utilize the two-stage certification process outlined above, and, instead, should analyze this case under the Fifth Circuit's newly established framework in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021). (Resp. at 10-11.) Plaintiff counters that district courts within the Fourth Circuit have consistently followed the two-step *Lusardi* framework for twenty years, and no other circuits have followed *Swales*. (Reply at 3-4.) In *Swales*, the Fifth Circuit rejected the two-stage collective certification process. *Swales*, 985 F.3d at 443. Instead, the court held that district courts "should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Id.* at 441.

The Court declines Defendant's invitation to apply this standard and will follow the approach of a litany of other courts within the Fourth Circuit, which have done the same when presented with this issue. *See, e.g., Amoko*, 2021 WL 6340992, at *3 (declining to follow *Swales*, because it did not bind courts within the Fourth Circuit, and because the defendant "ha[d] not presented the court with a single application of *Swales* by a district court within the Fourth Circuit"); *Santos*, 2021 WL 6073039, at *3 (refusing to follow *Swales*, because it was not bound by the Fifth Circuit's decisions, and because the facts that gave rise to *Swales* bore significant differences to the ones at issue); *Ison*, 2021 WL 5989084, at *3 (opting to use the "fairly lenient" two-step certification process "that ha[d] long been applied in [the] district"); *Mazariegos v. Pan 4 Am., LLC*, 2021 WL 5015751, at *4 (D. Md. Oct. 28, 2021) (declining to apply *Swales*, because *Swales* was not binding on Fourth Circuit courts, and because of the

7

factual differences between *Swales* and the case at bar); *see also Winks*, 2021 WL 2482680, at *2 n.3 (noting that Fourth Circuit has not yet clarified the factual showing necessary to meet FLSA's similarly-situated standard and applying the two-stage analysis without resolving issue of whether *Swales* should apply in the Fourth Circuit).

Likewise, courts in other circuits have refused to follow *Swales*. *See, e.g.*, *In re Albertsons*, 2021 WL 4028428, at *2 (7th Cir. Sept. 1, 2021) (holding that district court did not err in applying two-stage collective certification framework instead of *Swales*, as "district courts have 'wide discretion to manage collective actions'" (citation omitted)); *Branson v. All. Coal*, 2021 WL 1550571, at *4 (W.D. Ky. Apr. 20, 2021) (refusing to follow *Swales*, because of the importance of the district court's role in overseeing the notice process).

Like these courts, the Court sees no compelling reason to deviate from twenty years of established precedent. The Fifth Circuit's decision in *Swales* does not bind this Court. In light of the refusal of multiple district courts within the Fourth Circuit to apply *Swales*, and in the absence of guidance from the Supreme Court or the Fourth Circuit on the issue, the Court will continue to apply the two-stage collective certification process first established in *Lusardi*.

Moreover, the facts and procedural posture in this case diverge from that in *Swales* in a manner that only underscores the importance of conditional certification and early judicial involvement in the notice process. *See Branson*, 2021 WL 1550571, at *4 (electing not to follow *Swales*, partly because so many potential plaintiffs had already opted into the suit, without the court's intervention, and the court sought to exert more oversight over the notice process). *Swales* requires district courts to decide "potentially dispositive, threshold" merits matters — in that case, whether the plaintiffs should have been classified as non-exempt employees rather than independent contractors — before allowing notice to prospective plaintiffs to be sent out.

8

*Swales*, 985 F.3d at 441. The *Swales* court reasoned that courts should resolve these matters before authorizing notice, because "alerting those who cannot ultimately participate in the collective 'merely stirs up litigation.'" *Id.* (quoting *In re JP Morgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019)). However, in this way, the Fifth Circuit appeared to assume that court-facilitated notice constitutes the only method of notifying potential plaintiffs of a FLSA collective action. *Branson*, 2021 WL 1550571, at *4.

By contrast, since the beginning of this litigation, Plaintiffs' counsel has added over 100 opt-in plaintiffs with no judicial intervention or oversight. (ECF Nos. 9-12, 16-17, 20-21, 24-25, 17, 27, 30-32, 35, 37, 40); *see Branson*, 2021 WL 1550571, at *4 (noting that *Swales*' rationale does not apply when plaintiffs' counsel has already added opt-in plaintiffs with no judicial oversight). At this point, the Court lacks sufficient information to determine whether these opt-in plaintiffs' claims bear the legal and factual similarities necessary for inclusion in the collective. Approving the language and communication methods of the notice to potential plaintiffs would enable the Court to fulfill its "managerial responsibility to oversee the joinder of additional parties" and ensure that the notice process does not improperly stir up litigation. *Hoffman-La Roche*, 493 U.S. at 171. Applying the *Swales* framework would ultimately undermine the Court's oversight role in this case. With this background in mind, the Court now turns to the issue of whether the potential plaintiffs constitute similarly situated employees, as the FLSA requires.

### B. "Similarly Situated" Potential Plaintiffs

Plaintiffs have made a threshold showing that the potential plaintiffs constitute similarly situated employees. In their Motion for Conditional Certification, Plaintiffs argue that, based on twelve declarations from Defendant's employees across ten different states, they and the Putative

9

Class Members worked as non-exempt employees of Defendant; that Defendant uniformly subjected them to its company-wide policy requiring off-the-clock, unpaid work; that they performed similar duties; that Defendant paid them an hourly rate; and that Defendant did not provide them with all of their overtime compensation and compensation at their regular rate(s) of pay. (Pl.'s Mem. at 16.) Plaintiffs also highlight that at the time that they filed their Motion, 97 other current former call-center employees had filed pre-notice opt-in consent forms, demonstrating that others had been negatively affected by Defendant's allegedly illegal policies. (Pl.'s Mem. at 18.) Plaintiffs assert that they have met or exceeded the amount of evidence that courts usually require for satisfaction of the similarly-situated standard. (Pl.'s Mem. at 17.)

Defendant responds that evaluations of the Plaintiffs' and the Putative Class Members' claims would require individualized determinations of liability, rendering resolution on a class-wide basis inappropriate. (Resp. at 13-24.) Likewise, Defendant contends that its defenses to each of Plaintiffs' and the Putative Class Members' claims would require individualized evaluations, as well, based on the amount of unpaid, off-the-clock work that each individual completed. (Resp. at 24-26.) In support of its Response, Defendant submitted declarations by 65 customer service representatives ("CSR") from Defendant's call centers in 18 cities and 12 states. (ECF Nos. 38-1 through 38-65.)

In their reply, Plaintiffs emphasize that they have met their lenient burden at this stage, and that courts leave the question of individualized inquiries to the decertification stage, after the parties complete discovery and have a fuller understanding of the facts and legal issues. (Reply at 6-11.) They also take issue with Defendant's submission of "happy camper" declarations from current employees, deeming them "self-serving and conclusory." (Reply at 11.)

10

The Court agrees with Plaintiffs and finds that they have satisfied their burden at this stage. "The submission of consistent employee declarations . . . has consistently been held as sufficient and admissible evidence of a policy to be considered for conditional class certification." *Hargrove v. Ryla Teleservs., Inc.*, 2012 WL 489216, at *8 (E.D. Va. Jan. 3, 2012), *report and recommendation adopted*, 2012 WL 463442 (E.D. Va. Feb. 13, 2012). "[T]hose declarations must show that the employees have first-hand knowledge of the events described therein." *McNeil v. Faneuil, Inc.*, 2016 WL 11673838, at *3 (E.D. Va. Aug. 3, 2016). Further, because this step requires that the potential plaintiffs to have been "victims of a single decision, policy, or plan[,] . . . plaintiffs must submit some evidence that the alleged FLSA violations were not the product of happenstance or outlier instances of rogue supervisor behavior." *Id.* As discussed previously, the determination as to whether the potential plaintiffs satisfy the similarly-situated inquiry is made using a "fairly lenient standard." *Id.*

Plaintiffs have submitted declarations in support of their allegations that Defendant maintained and enforced a corporate-wide policy that required hourly call center workers to get call-ready before the start of their shifts and work during unpaid meal breaks, as well as finish calls and shut down their computers after the end of their shifts, all of which resulted in them accruing overtime for which Defendant did not properly compensate them under the FLSA. (*See, e.g.*, Decl. of Sharey Thomas ¶¶ 2, 5, 7-8, 16 ("Thomas Decl.") (ECF No. 29-1) (declaration by former hourly CSR employed by Defendant stating that all CSRs receive the same training and must arrive at their call center early to start up their computer, and that she often worked an additional one to two hours each week beyond her regular hours for which she was not paid overtime); Decl. of Jennifer Gilvin ¶¶ 2, 5, 10, 13, 15 ("Gilvin Decl.") (ECF No. 29-2) (declaration by current hourly CSR making similar statements and adding that she had to

11

finish all calls that ran beyond the end of her shift).) This amounts to the "modest factual showing" needed for conditional certification. *Choimbol*, 475 F. Supp. 2d at 564.

As Plaintiffs correctly posit, the conditional certification step merely requires only a modest factual showing of similarity between Plaintiffs and the Putative Class Members, and the Court need not address merits issues at this first step. (Pl.'s Mem. at 15; Reply at 8-11.) At this point, the Court need not prematurely delve into whether Plaintiffs' claims require individualized treatment that would render a collective action unmanageable.

Concerns about the predominance of individualized nature of Plaintiffs' and the Putative Class Members' claims require merits-based analyses that courts wait to tackle during the decertification stage, after notice to potential plaintiffs is finalized and the parties have completed discovery. *See Wiley v. Asplundh Tree Expert Co.*, 2013 WL 12182398, at *2 (S.D.W. Va. Nov. 1, 2013) ("Defendant's argument of the individualized nature of said claims for overtime compensation is more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery." (citations omitted)); *Robinson v. Empire Equity Grp., Inc.*, 2009 WL 4018560, at *4 (D. Md. Nov. 18, 2009) (noting that the defendant's arguments regarding the dissimilarities between plaintiffs and putative class members should be addressed at the decertification step so that "factual issues can be fleshed out in discovery" (citation omitted)). Indeed, the cases that Defendants themselves cite regarding the problems that arise from varying work conditions and individualized factual scenarios arose at the decertification stage. (Resp. at 13 (citing *Johnson v. TGF Precision Hair Cutters, Inc.*, 2005 WL 1994286, at *3-4, 8 (S.D. Tex. Aug. 17, 2005); and then citing *Brechler v. Qwest Commc'ns Int'l, Inc.*, 2009 WL 692329, at *3 (D. Ariz. Mar. 17, 2009)).) Moreover, the "happy camper" declarations that Defendant submitted in support of this

12

argument "are generally entitled to little or no weight" at the initial conditional certification step, "given the risk that the employer secured such declarations through explicit or implicit coercion." *Spencer v. Macado's, Inc.*, 2019 WL 4739691, at *4 (W.D. Va. Sept. 27, 2019). For these reasons, the Court conditionally certifies the class and will order notice to potential class members, as discussed below.

### C. Plaintiff's Requested Relief

First, Plaintiffs ask the Court to order Defendant to provide counsel for Plaintiffs with the names, current or last known addresses, email addresses, phone numbers, cell phone numbers and dates of employment for current and former hourly call-center employees who match the description of the conditionally certified class within seven days of the entry of the Court's order conditionally certifying the class. (Pl.'s Mem. at 19.) Additionally, Plaintiffs seek to disseminate the Notice and Consent form to the Putative Class Members via mail, email and text message. (Pl.'s Mem. at 20.) They also request that the Putative Class Members be given the option to execute their consent forms online through an electronic signature service. (Pl.'s Mem. at 24.) Additionally, they request that the Notice and Consent forms be posted in plain view at Defendant's call centers across the country. (Pl.'s Mem. at 24.) Finally, they ask that the Court authorize a 90-day opt-in period, as well as a reminder notice to be sent via email and text message halfway through the period. (Pl.'s Mem. at 24.)[4]

In response, Defendant takes issue with several aspects of Plaintiffs' proposed Notice and Consent requests. First, it contends that the term "hourly call-center employees" is overbroad. (Resp. at 27.) Second, it argues that the Notice must state that Defendant "(1) denies Plaintiffs'

---

[4] Because the Court grants Plaintiff's Motion for Conditional Certification, it also DENIES Defendant's request for targeted discovery on the proposed collective. (Resp. at 26-27.)

13

allegations; (2) contends that the lawsuit is without merit; and (3) contends that it has properly paid Plaintiffs and all other current and former customer service representatives all wages and overtime owed under the FLSA." (Resp. at 27.) Third, Defendant assert that Section Three of the proposed Notice should be revised "to state that an individual is eligible to join the lawsuit if: (1) he or she was employed by [Defendant] as an hourly Customer Service Representative at any point within the past three years, *and* (2) was not paid for all hours worked." (Resp. at 28 (emphasis in original).) Fourth, Defendant states that the last sentence of Section 5 of the proposed Notice could mislead readers and discourage individuals from filing separate claims. (Resp. at 28.) It seeks to revise that sentence to say: "Because of the statute of limitations, eligible employees who do **not** join this litigation or choose to file their own separate claims **after** their limitations period has expired, will likely lose their rights to recover overtime for work performed in the past for [Defendant]." (Resp. at 28 (emphasis in original).) Fifth, it requests that Paragraph 5 of the proposed Consent form be deleted, because it lacks relevance to the matter. (Resp. at 28.) Finally, Defendant requests that the Court limit the Notice to one mailing via first-class mail with a sixty-day notice period, and that it modify the proposed schedule to give Defendant fourteen days to provide a notice list to Plaintiffs containing only the names and addresses of the Putative Class Members. (Resp. at 28.) The Court addresses each of these issues in turn.

### 1. *Disclosure of the potential plaintiffs' contact information*

"Courts should not modify a plaintiff's proposed notice 'unless such alteration is necessary.'" *Brown v. Energy Servs. Grp. Int'l, Inc.*, 2021 WL 5889707, at *3 (E.D. Va. Dec. 13, 2021) (citation omitted). First, the Court grants Plaintiffs' request for an order directing Defendant to provide Plaintiffs' counsel with the names, current or last known physical

addresses, dates of employment and email addresses for current and former Hourly Call-Center Employees fitting the description of the conditionally certified class. *See, e.g., id.* at *3-4 (permitting disclosure of email addresses); *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 610 (S.D.W. Va. 2020) (ordering disclosure of names, physical addresses, email addresses and phone numbers for potential plaintiffs, noting that email constitutes a more reliable form of communication than other methods).

Courts in the Fourth Circuit appear to be split in their approach to ordering disclosure of potential FLSA plaintiffs' phone numbers. *Compare Pecora v. Big M Casino*, 2019 WL 302592, at *5 (D.S.C. Jan. 23, 2019) (denying plaintiffs' request for disclosure of potential plaintiffs' phone numbers, because plaintiffs did not demonstrate a "special need" for the numbers, and because email and text messaging furnish equally reliable communication methods), *with Gregory v. Belfor USA Grp., Inc.*, 2012 WL 3062696, at *6 (E.D. Va. July 26, 2012) (granting plaintiffs' request for disclosure of potential plaintiffs' home and/or mobile numbers without a showing of a "special need" for this information).

However, courts in this District have repeatedly ordered the disclosure of potential plaintiffs' phone numbers in FLSA collective action cases without a showing of special need for this information, especially in recent years, as text messaging has become a ubiquitous form of communication. *See, e.g., Brown*, 2021 WL 5889707, at *3-4 (granting disclosure of phone numbers without a special showing); *Allen v. Cogent Commc'ns*, 2014 WL 4270077, at *6 (E.D. Va. Aug. 28, 2014) (same); *Stone v. SRA Intern., Inc.*, 2014 WL 5410628, at *10 (E.D. Va. Oct. 22, 2014) (same); *LaFleur*, 2012 WL 4739534, at *12 (same); *Gregory*, 2012 WL 3062696, at *6 (same); *but see Houston*, 591 F. Supp. 2d at 836 (denying blanket request for disclosure of phone numbers, but noting that if the notice mailed to the putative plaintiffs was returned as

undeliverable, then the plaintiffs could request the phone number of those individuals from the defendants so that the plaintiffs could contact them to obtain a mailing address). Because courts in this District have consistently ordered FLSA defendants to disclose phone numbers and permitted plaintiffs to disseminate notice via text message, the Court grants Plaintiffs' request for the cell phone numbers of the potential plaintiffs. However, as discussed during the conference call between the Court and the parties regarding the instant Motion, the Court will not permit disclosure of the potential plaintiffs' home phone numbers. (Tr. at 6:19-25.) As noted below, the Court will permit counsel for Plaintiffs to text, but not call, the potential plaintiffs, making disclosure of the potential plaintiffs' home phone numbers unnecessary.

Additionally, the Court also denies Plaintiffs' request for an order directing disclosure of the last four digits of potential plaintiffs' Social Security Numbers. *See Allen*, 2014 WL 4270077, at *6 (denying Plaintiffs' request for last four digits of Social Security numbers).

Finally, the Court allows a fourteen-day period from the entry hereof for Defendant to submit the requested contact information to Plaintiffs, because Plaintiffs consent to this modification of its proposal of seven days for disclosure. As to the method of communication, then, the Court grants Plaintiffs' request for an order requiring the disclosure of the names, current or last known physical addresses, dates of employment and email addresses for current and former Hourly Call-Center Employees fitting the description of the conditionally certified class.

### 2. *Communication methods and schedule*

The Court authorizes Notice of the instant suit by mail, email and text message, as courts throughout the Fourth Circuit commonly do. *See, e.g., Brown*, 2021 WL 5889707, at *3 (authorizing notice via email, text message and regular mail); *O'Quinn*, 469 F. Supp. at 591

(same). The Court also permits potential plaintiffs to sign their consent forms electronically. *See Gagliastre v. Captain George's Seafood Rest.*, 2018 WL 9848232, at *5 (E.D. Va. Mar. 13, 2018) (permitting electronic signatures on notice and consent forms). The text message sent to potential plaintiffs may include the proposed text and hyperlink to view the court-authorized notice that Plaintiffs request. (Pl.'s Mem. at 21 n.13.) Importantly, however, although counsel for Plaintiffs may text potential plaintiffs to notify them of this suit, they are not permitted to call the potential plaintiffs.

Further, the Court permits a 90-day opt-in period, in line with courts in this circuit and nationwide. *Butler v. DirectSAT*, 876 F. Supp. 560, 575 (D. Md. 2012) ("Notice periods may vary, but numerous courts around the country have authorized ninety day opt-in periods for collective actions."). A reminder Notice may be sent via email and text message halfway through the opt-in period. *See Lupardus v. Elk Energy Servs., LLC*, 2020 WL 4342221, at *9 (S.D.W. Va. July 28, 2020) ("Recipients may overlook the initial notifications, even in three forms, or become sidetracked from filing their consent form, but a second round helps to ensure that putative class members receive the notice and are reminded to act should they wish to do so.") However, the Court does not authorize Plaintiffs to post the Notice at Defendant's call centers across the country, as this method is "too invasive and duplicative," and Plaintiffs have not demonstrated that their three other proposed methods of notifying potential plaintiffs would be ineffective. *Stacy v. Jennmar Corp. of Va., Inc.*, 2021 WL 4787278, at *4 (W.D. Va. Oct. 14, 2021); *see also Graham*, 331 F.R.D. at 622-23 (allowing notice via mail and email, but denying the plaintiffs' request to post notice at the defendant's workplace).

### 3. *Contents of the Notice and Consent form*

First, the Court grants Defendant's objection to the use of the term "hourly call-center employees" in the proposed Notice. (Resp. at 27.) To minimize confusion, and to ensure that only hourly CSRs opt in, the Court orders Plaintiffs to use the terms "hourly customer service representatives" instead of "hourly call-center employees" or "Maximus employees."

Second, the Court grants Defendant's request to modify the Notice and Consent form to include Defendant's position on the instant action (Resp. at 27), because Plaintiff agrees to this request. Section 2 of the Notice must clearly state that Defendant "(1) denies Plaintiffs' allegations; (2) contends that the lawsuit is without merit; and (3) contends that it has properly paid Plaintiffs and all other current and former customer service representatives all wages and overtime owed under the FLSA." (Resp. at 27.)

Third, the Court denies Defendant's objection to the statement in Section 3 of the Proposed Notice, which states in relevant part that "You are eligible to join this lawsuit if: . . . . You believe that you were not paid for all hours worked." (Notice at 2; Resp. at 28.) The potential plaintiffs need not know or prove the merits of their claim before they opt into this suit. The use of the word "believe" in the Notice's description of the class is appropriate.

Fourth, the Court grants Defendant's request to modify the last sentence in Section 5, which pertains to the statute of limitations. Currently, this sentence states that "Because of the statute of limitations, eligible workers who do ***not*** join this litigation or choose to file their own separate claims, may lose their rights to recover unpaid wages and overtime for work performed in the past for Maximus." (Notice at 3.) As Defendant correctly points out, this phrasing implies that those who do not join the instant suit or choose to file their own individual suit may lose the opportunity to recover unpaid wages and overtime pay. (Resp. at 28.) Thus, the Court modifies

18

this sentence according to Defendant's proposed changes so that it reads, "Because of the statute of limitations, eligible employees who do not join this litigation or choose to file their own separate claims after their limitations period has expired will likely lose their rights to recover overtime for work performed in the past for Maximus." (Resp. at 28.)

Fifth, the Court denies Defendant's objections to Paragraph 5 of the proposed Consent Form, which states that "If needed, I authorize the attorneys at the law firms of Anderson Alexander, PLLC and Butler Curwood, PLC to use this consent to re-file my claim in a separate lawsuit or arbitration against Maximus." This paragraph will enable Plaintiffs' counsel to continue to represent the class members, should that become necessary, and has received the approval of other judges in the Richmond Division. *Brown*, 2021 WL 5889707, at *4 (granting plaintiffs' motion for conditional certification and approving notice); (Pls.' Mem. of Law Supporting Mot. for Conditional Certification and Notice Ex. 11 at 4, *Brown*, 2021 WL 5889707 (ECF No. 19-11) ("If needed, I authorize the Plaintiffs' lawyers to use this consent to re-file my claim in a separate lawsuit or arbitration.").) In conclusion, the Court permits in part and rejects in part Plaintiffs' proposed Notice and Consent form, Notice schedule and methods of communication.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion (ECF No. 28).

Defendant requests that the Court certify this matter for interlocutory appeal under 28 U.S.C. § 1292(b) for resolution of the question of whether to adopt *Swales* when reviewing motions for conditional certification under FLSA. (Resp. at 11.) If Defendant still seeks to certify an interlocutory appeal, it should move to do so after reviewing this Opinion, and the

19

Court will evaluate the merits of the motion once it ripens. *See Buffington v. Ovintiv USA Inc.*, 2021 WL 3726194, at *1-2 (D. Col. Aug. 23, 2021) (addressing the defendant's motion to certify an interlocutory appeal to the Tenth Circuit to clarify the FLSA collective certification process post-*Swales* after the district court conditionally certified the collective and after the parties submitted full briefing on the defendant's motion to certify an interlocutory appeal). Thus, Defendant shall have fourteen days from the entry hereof to move to certify an interlocutory appeal. Pursuant to Local Rule 7(F), Plaintiffs shall have fourteen days to respond, and Defendant shall have six days to reply. In the interim, the Court hereby STAYS all aspects of this Opinion pending resolution of the certification issue, except the production of the personal contact information of the potential plaintiffs.

Finally, during the conference call between the parties and the Court on February 25, 2022, counsel for Plaintiffs raised the issue of tolling the statute of limitations for the putative class members who may join this suit. (Tr. at 7:11-21.) To ensure that this matter is fully briefed, Plaintiffs shall have fourteen days from the entry hereof to move to toll the statute of limitations. Defendant shall have fourteen days to respond, and Plaintiffs shall have six days to reply, pursuant to Local Rule 7(F).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: February 28, 2022